UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLIVIA GONZALES, | 1:10-cv-01330-SKO |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | (Doc. 1) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## I.  INTRODUCTION

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to Title II and Title XVI of the Social Security Act (the "Act"). 42 U.S.C. §§ 405(g); 1383(c)(3). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 8, 9.) *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

## II.  FACTUAL BACKGROUND

Plaintiff was born on July 1, 1975, and previously worked as a kitchen helper, nutritional aide, and hospital housekeeper. (Administrative Record ("AR") 606-08.) Plaintiff has a high school education. (AR 606-07.) Plaintiff filed applications for DIB and SSI on May 20, 2004, and filed subsequent applications on July 3, 2007. (AR 25, 157-59, 564-66.) Plaintiff alleges that she became unable to work on April 4, 2004.[2]  (AR 25, 647-48.)

**A.  Medical Evidence**

Plaintiff asserts that her inability to work is due to asthma, back and knee problems, a heart murmur, sleep apnea, and mental disorders, which include memory loss and depression. (AR 79-80, 88.) On March 31, 2005, Plaintiff was examined by Dr. Paul D. Casner. (Doc. 287-90.) At the time of examination, Plaintiff complained of pain in her right knee, depression, and shortness of breath. (AR 287.) Plaintiff reported she had injured her right knee by falling into a three-foot-deep hole while walking in the dark two years before. (AR 287.) She also reported that she has suffered from asthma since the age of five, and she is under the regular care of a pulmonologist. (AR 287.)

On examination, Dr. Casner noted that Plaintiff had a prominent limp favoring the right side, but her posture was otherwise good. Plaintiff was able to transfer from a seated to a standing position and mount and dismount the examination table without assistance. (AR 288.) Plaintiff used a hinged knee brace on her right knee. (AR 288.) Dr. Casner determined that Plaintiff's flexion was 0 to 80 degrees in her right knee and 0 to 130 degrees in her left knee. (AR 289.) Dr. Casner diagnosed Plaintiff with: (1) post-traumatic pain in her right knee, exacerbated by her body weight; (2) depression; and (3) asthma, severe and persistent, exacerbated by her body weight. (AR 289.)

As to Plaintiff's functional capacity, Dr. Casner opined that Plaintiff could be expected to stand and walk cumulatively less than two hours in an eight-hour workday, limited by pain in her knee and shortness of breath. (AR 290.) He also found that Plaintiff could sit without restriction, but would require an assistive device such as a brace and would benefit from a cane. (AR 290.) She

---

[2] Plaintiff's initial alleged onset date was May 1, 2003, but was amended in a hearing before the ALJ, with the assistance of counsel. AR 25, 647-48.

could lift and carry 10 pounds frequently and 20 pounds occasionally. (AR 290.) As to postural limitations, she could perform occasional forward bending and stooping, but could not squat, kneel, or crawl due to right-knee pain. (AR 290.) Plaintiff was limited in her ability to walk distances and climb stairs due to knee pain, and she must avoid airway irritants such as dust, smoke, fumes, and extreme cold. (AR 290.)

On April 10, 2005, Plaintiff underwent a psychiatric evaluation conducted by Dr. Soad Khalifa. (AR 317-19.) Plaintiff reported that she suffers from chronic asthma, diabetes mellitus, depression, low-back pain, and problems resulting from a caesarean section. (AR 317.) On examination, Dr. Khalifa determined that Plaintiff had a coherent, normal rate of speech; her stream of mental activity was linear; her thought content was mainly about her physical problems; her mood was dysphoric, but her affect was appropriate; she had difficulty with remote memory and some difficulty with recent memory, her "nervousness caused her some problems," and her concentration was impaired; she could not spell backwards; her abstract thinking was poor; but her insight and judgment were intact. (AR 318-19.) Dr. Khalifa opined that Plaintiff could not manage her own funds and she "will have some restrictions with difficulty in social functioning and responding appropriately because of her mild depressive symptoms and nervousness, physical problems, and knee pain." (AR 319.)

On April 26, 2005, state agency consultative physician, Dr. Dorell Sharbaugh, reviewed Plaintiff's medical records and completed a Physical Residual Functional Capacity Assessment. (AR 320-27.) Dr. Sharbaugh opined that Plaintiff could occasionally lift 20 pounds; frequently lift or carry 10 pounds; stand and/or walk at least two hours in an eight-hour day, but required a hand-held assistive device for ambulation; sit for a total of six hours in an eight-hour day; and was unlimited in her ability to push or pull. (AR 321.) Dr. Sharbaugh also opined that Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl. (AR 322.) Dr. Sharbaugh disagreed with Dr. Casner's opinion regarding Plaintiff's ability to concentrate and walk. (AR 337.) Dr. Sharbaugh

found Dr. Casner's opinion "over-restrictive and does not take into account normal PFTS[3] or field office observations of no difficulty with concentration or walking." (AR 337.)

On May 3, 2005, Dr. Archimedes Garcia reviewed Plaintiff's medical records and completed a Psychiatric Review Technique Form. (AR 328-30.) He opined that Plaintiff suffered from an affective disorder. (AR 328.) Dr. Garcia also opined that Plaintiff had mild limitation in (1) activities of daily living; (2) maintaining social functioning; and (3) maintaining concentration, persistence, or pace. (AR 330.) There was insufficient evidence to determine whether she experienced any episodes of decompensation. (AR 330.) Plaintiff ranged from "not significantly limited" to "moderately limited" in her ability to understand, remember, or carry out detailed instructions. (AR 331.) In all other areas of understanding and memory, sustained concentration and persistence, social interaction, and adaption, Plaintiff was "not significantly limited." (AR 332.) Dr. Garcia also indicated that Plaintiff "can sustain simple repetitive tasks with adequate pace and persistence, can adapt and relate to coworkers and [supervisors]." (AR 333.) On August 25, 2005, Dr. Glenn Ikawa reviewed Dr. Garcia's opinion and indicated that he concurred with the assessment. (AR 339-40.)

On October 10, 2007, Dr. Rustom F. Damania examined Plaintiff. Plaintiff reported that she experienced pain every day in her lower back that was "sharp" in character and radiated down both her legs. (AR 520.) On examination, her right knee was tender and there "were palpable and audible crepitations." (AR 524.) Dr. Damania reported that Plaintiff was unwilling to walk without her cane during examination and "declined to walk on her toes and heels." (AR 525.) Dr. Damania opined that Plaintiff should be able to lift and carry 10 pounds both occasionally and frequently. (AR 525.) Plaintiff can stand and walk for two to four hours in an eight-hour workday with normal breaks and the use of a cane. (AR 525.) Plaintiff would have no postural limitations so long as any postural demands Plaintiff encountered would be only occasional; she had no manipulative, visual, or communicative impairments. (AR 525.) Plaintiff would, however, have environmental limitations

---

[3] This is not defined by the physician, but it appears to refer to pulmonary function tests.

4

due to bronchial asthma, and her right-knee pain and low-back pain would limit her ability to climb and balance. (AR 525.)

On November 8, 2007, Plaintiff underwent a psychological evaluation conducted by Dr. Richard Engeln. (AR 526-30.) Plaintiff reported to Dr. Engeln that she "did not attend any high school at all. She did not go to much school, even in elementary school, because she was sick all the time in childhood." (AR 527.) She also reported that she was depressed, and she believed her depression was linked to her physical medical problems. (AR 527.)

Dr. Engeln reported the following:

> [Plaintiff] carried a sense of anger, presented sullen in affect, pouty in presentation. She presented with low attention to dress and grooming. Verbal expression was easily understood, appropriate in form and association. Interview presentation suggested at least high borderline intellectual skills. She was unwilling to demonstrate competency. Response pattern did not suggest credibility. Her response to the Rey 15 Item Memory Test II, was positive for exaggerate. Obtained scores are not valid measurements of her ability, but instead, reflect attitudinal-emotional issues.
> . . .
> Because of her exaggeration, I am unable to say what her abilities actually are. She appears mentally competent to manage funds. History[] and interview presentation suggested she is capable of job adjustment in an entry-level context where instructions are simple, and unidimensional and normal supervision is provided. She would be able to perform one-to-two step simple job instructions, but not able to receive complex or technical job instructions. She has made such job adjustments in the past. She might be restricted in making a job adjustment in a context where academic demands are components. There are no psychological restrictions to job adjustment potential. Restrictions to job adjustments are medical-physical in nature.

(AR 528-29.)

**B.    Administrative Proceedings**

**1.    January 22, 2007, Hearing**

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 79-84, 88-92, 94.) On January 22, 2007, ALJ Christopher Larsen held a hearing where a Vocational Expert ("VE") testified. The ALJ posed a hypothetical to the VE that assumed a worker of Plaintiff's age, education, and work experience who retained the ability to "understand, remember, and carry out simple one or two step job[] instructions" and could lift and carry 20 pounds occasionally, 10 pounds frequently; stand and walk a total of two hours in an eight-hour day with the use of a cane;

sit for a total of six hours; climb, balance, stoop, kneel, crouch, and crawl only occasionally; and must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (AR 652.) The VE responded that such a person could not perform any of Plaintiff's past relevant work, but could perform "the entire world of sedentary unskilled" work which included 80,933 jobs in the State of California. (AR 652.) On March 23, 2007, the ALJ issued a decision denying benefits. (AR 66-74.) After seeking Appeals Council review, which was granted, Plaintiff's application was remanded for further consideration. (AR 75-78.)

### 2. February 11, 2008, Hearing

On February 11, 2008, a new hearing was held, but no VE testified. (AR 657-80.) At the hearing, Plaintiff personally appeared and testified that she experiences pain in her knee all day and swelling from her knee down her leg approximately twice a week, which she treats by elevating her leg. (AR 663-65.) Plaintiff uses a cane for all purposes, which was prescribed by a doctor. (AR 667.) She cannot walk more than a city block, cannot stand more than ten minutes at one time, and can only sit for 20 minutes at a time. (AR 668.) She can lift approximately 10 pounds. (AR 669.) She also experiences sleep difficulties relating to sleep apnea and anxiety, and she needs naps in the afternoon or the evening due to her sleeping difficulties. (AR 670-71.) She suffers from panic attacks during which she suffers anxiety and "sees things sometimes"; she experiences multiple panic attacks every other day. (AR 672.) She hears voices occasionally and sometimes feels suicidal. (AR 677.)

On April 14, 2008, the ALJ issued a decision finding Plaintiff not disabled since April 4, 2004. (AR 22-31.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since her alleged date of disability on April 4, 2004; (2) has an impairment or a combination of impairments that is considered "severe" based on the requirements in the Regulations; (3) does not have an impairment or combination of impairments that meets or equals one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is unable to perform her past relevant work; but (5) could perform jobs that exist in significant numbers in the national economy. (AR 22-31.) Plaintiff sought review of this decision before the Appeals Council.

On May 27, 2010, the Appeals Council denied review. (AR 1-11.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

**C.    Plaintiff's Contentions on Appeal**

On July 23, 2010, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. Plaintiff asserts that the ALJ improperly evaluated Dr. Casner's opinion regarding Plaintiff's physical limitations. (Doc. 14, at 15-18.) Plaintiff also contends that, even assuming the ALJ's Residual Functional Capacity ("RFC")[4] determination was entirely accurate, the RFC indicates that she cannot perform the full range of sedentary, unskilled work as stated by the VE. Specifically, her limitation to work that involved simple, one- to two-step instructions seriously erodes the sedentary work base; therefore, the VE's testimony conflicts with the Dictionary of Occupational Titles ("DOT").

## III.  SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

U.S. 197, 229 (1938)).  The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

### IV.   APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).  The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy.  42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability.  In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c).  If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1.  *Id.* §§ 404.1520(d), 416.920(d).  If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work.  *Id.* §§ 404.1520(f), 416.920(f).  If not, in the Fifth Step, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy.  *Id.* §§ 404.1520(g), 416.920(g).  If a claimant is found to be disabled or

not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## V.   DISCUSSION

**A.   The ALJ Properly Considered the Opinion of Dr. Casner**

Plaintiff asserts that the ALJ failed to provide legally sufficient reasons to reject the opinion of Dr. Casner. (Doc. 14, at 14-18.) The Commissioner contends that the ALJ gave multiple legally sufficient reasons to support his decision. (Doc. 21, at 10-13.)

In March 2005, Dr. Casner opined that Plaintiff could stand and walk for a total of less than two hours in an eight-hour workday, "limited by pain in the knee and shortness of breath." (AR 290.) Plaintiff asserts that the ALJ rejected Dr. Casner's opinion merely because it conflicted with other doctors' opinions. Plaintiff contends that the ALJ's acknowledgment of a difference of opinions among doctors does not provide a sufficient basis to select one opinion over another.

Generally, a difference of opinion between two doctors is not a legitimate basis, in and of itself, to select one doctor's opinion over another. Here, however, Dr. Casner's opinion conflicted with the other physicians of record who offered opinions regarding Plaintiff's physical limitations. Dr. Sharbaugh opined, after review of the record, that Plaintiff could walk for at least two hours of an eight-hour day and expressly disagreed with Dr. Casner's opinion regarding the amount of time Plaintiff was able to walk. (AR 321.)  After examination, Dr. Damania found that Plaintiff could walk two to four hours of an eight-hour workday. (AR 525.)

The ALJ's rejection of Dr. Casner's opinion on this basis was not predicated merely on a difference of opinion, but on the fact that all the other examining or consulting physicians who offered an opinion on this issue disagreed with Dr. Casner's assessment. Thus, the ALJ was pointing out that the quantitative weight of the medical evidence was contrary to Dr. Casner's opinion. Further, this was only one of the reasons the ALJ discussed in finding Dr. Casner's opinion regarding Plaintiff's ability to walk was entitled to less weight.

Dr. Casner explicitly noted at Plaintiff's examination that she would benefit from the use of a cane – which she was not using at that time. (AR 290 ("claimant requires an assistive device and would benefit from a cane").)  When Dr. Damania examined Plaintiff two years later, Plaintiff

presented using a cane. (AR 520.) Dr. Damania opined that Plaintiff could walk, with the assistance of the cane, between two to four hours per eight-hour workday. (AR 525 ("patient can walk two to four hours out of an eight[-]hour work day with normal breaks and the use of a cane").)  In concluding that Plaintiff could walk up to two hours a day, the ALJ noted that Dr. Damania's opinion was predicated upon Plaintiff's use of a cane and that the ALJ's RFC provided for the use of a cane. (*See* AR 28.)  It can be inferred from the ALJ's decision that the ALJ found Dr. Damania was in a better position to evaluate Plaintiff's abilities with an assistive device because she presented at examination using the cane. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("[W]e are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion . . . if those inferences are there to be drawn.").  Based on Dr. Damania's assessment, the ALJ interpreted the evidence as indicating that her abilities were somewhat greater than those opined by Dr. Casner, who was not able to assess Plaintiff's abilities with the use of the cane.  Thus, the fact that the ALJ found Plaintiff's ability to walk was slightly greater than Dr. Casner opined in light of Dr. Damania's assessment was a rational interpretation of the medical evidence.

Additionally, the ALJ carefully provided additional reasons why Dr. Casner's opinion was less probative regarding Plaintiff's ability to stand and walk. (AR 28-29.) The ALJ explained that Dr. Casner's opinion, specifically with regard to Plaintiff's ability to stand and walk, appeared to be based on her self-reports of pain and shortness of breath, rather than objective medical evidence. (*See* AR 290 (Dr. Casner opines that claimant can stand less than two hours per day, "limited by pain in the knee and shortness of breath").)  The ALJ reasoned that, because Dr. Engeln reported that Plaintiff showed signs of malingering in the examination he administered, Plaintiff was not entirely credible.  To the extent Dr. Casner's opinion of Plaintiff's ability to walk was predicated on her subjective reports of pain and shortness of breath, it had less probative value given Plaintiff's lack of credibility. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (if ALJ determines a claimant's statements are not fully credible, it is reasonable to discount a physician's assessment that is based on those statements).

Ultimately, the ALJ's conclusion that Plaintiff could walk two hours per day with the use of a cane was a rational interpretation of the medical evidence and supported by substantial evidence.

Quantitatively, more doctors were in agreement that Plaintiff could walk at least two hours per day, and Dr. Damania's opinion regarding her ability to walk was formulated after examining Plaintiff while using a cane. Although Dr. Casner thought Plaintiff would benefit from the use of a cane, his opinion was not formulated on Plaintiff's use of that assistive device. Further, Dr. Casner's opinion regarding Plaintiff's ability to walk appeared to be based only on Plaintiff's subjective complaints of pain, and the ALJ found that Plaintiff's subjective complaints were not credible. As this is a rational interpretation of the medical evidence, it must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) (noting that "[w]here medical testimony is conflicting, . . . it is the ALJ's role to determine credibility and resolve the conflict," and "[i]f the evidence admits of more than one rational interpretation, we must uphold the decision of the ALJ").

Plaintiff asserts that the ALJ merely substituted his judgment for that of Dr. Casner's. The Court disagrees. The ALJ articulated precisely what medical evidence he contrasted with Dr. Casner's opinion and provided the basis for his interpretation of the medical evidence. It is the province of the ALJ to assess the medical evidence, provide an interpretation thereof, and resolve any conflicts or ambiguities that exist. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (ALJ has the responsibility of resolving ambiguities and conflicts in the medical evidence). The ALJ's consideration of Dr. Casner's opinion was legally sufficient and the rejection of a portion of Dr. Casner's opinion was supported by specific and legitimate reasons that were predicated on substantial evidence.

**B.      VE's Testimony and Conflicts with the Dictionary of Occupational Titles**

   **1.      Plaintiff's Argument**

The RFC formulated by the ALJ expressly limits Plaintiff to work involving only simple, one- or two-step instructions. This limitation was posed to the VE as a hypothetical, and the VE opined that such a person could perform the full range of sedentary, unskilled work. Plaintiff contends that a limitation to simple, one- or two-step job instructions erodes the unskilled, sedentary work base. Specifically, a person limited to jobs with one- or two-step instructions would be precluded from work in the unskilled, sedentary category that required a reasoning level greater than 1. In this way, the VE's testimony that a person limited to jobs involving only one- or two-step job

instructions would be able to perform the entire universe of unskilled, sedentary work conflicts with jobs identified by the Dictionary of Occupational Titles ("DOT") in the unskilled, sedentary category that require a higher degree of reasoning ability.

### 2. Vocational Component Definitions

#### a. DOT Vocational Components

Each job title identified in the DOT is accompanied by a definition that provides a list of various descriptive components associated with that particular job title, including a strength component that rates the physical demands of the job; a general educational development component ("GED"), that "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance"; and a specific vocational preparation ("SVP") component that rates the "amount of lapsed time required by a typical worker to learn the techniques, acquire information, and develop the facility needed for average performance in a specific job-worker situation." SCODICOT, App. C.

The strength component is "expressed by one of five terms: Sedentary, Light, Medium, Heavy, and Very Heavy."

> Sedentary work – Exerting up to 10 pounds of force occasionally . . . and/or a negligible amount of force frequently . . . to lift, carry, push, pull or otherwise move objects including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.
>
> Light Work – Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly . . . to move objects. . . .
>
> Medium Work – Exerting 20 to 50 pounds of force occasionally, and/or 10 to 25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly to move objects . . .
>
> Heavy Work – Exerting 50 to 100 pounds of force occasionally, and/or 25 to 50 pounds of force frequently, and/or 10 to 20 pounds of force constantly to move objects . . . .
>
> Very Heavy Work – Exerting in excess of 100 pounds of force occasionally, and/or in excess of 50 pounds of force frequently, and/or in excess of 20 pounds of force constantly to move objects.

SCODICOT, App. C.

The GED component is comprised of three "divisions": "Reasoning Development," "Mathematical Development," and "Language Development." DICOT, 1991 WL 688702. The Reasoning Development division consists of six levels of reasoning ability, with Level 6 being the highest. *Id.* Relevant here are the first three levels of reasoning ability, defined as follows:

> Level 1: Apply commonsense understanding to carry out simple one-or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.
>
> Level 2: Apply common sense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.
>
> Level 3: Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

*Id.*

Finally, the SVP component describes a job's specific vocational preparation. A job's SVP centers on "the amount of lapsed time" it takes for a typical worker to master the job's duties. DICOT, 1991 WL 688702. The DOT identifies nine mutually exclusive and non-overlapping levels of SVP:

> Level 1: Short demonstration only
> Level 2: Anything beyond short demonstration up to and including 1 month
> Level 3: Over 1 month up to and including 3 months
> Level 4: Over 3 months up to and including 6 months
> Level 5: Over 6 months up to and including 1 year
> Level 6: Over 1 year up to and including 2 years
> Level 7: Over 2 years up to and including 4 years
> Level 8: Over 4 years up to and including 10 years
> Level 9: Over 10 years

*Id.* Each job title identified in the DOT provides a definition that contains a compilation of these components, assigning a level-rating within each component. Thus, a job might be defined as sedentary, with an SVP of 2, and a GED reasoning level of 3.

### b. Regulatory Definitions Related to Vocational Components

Social Security Regulations classify physical exertion requirements in the same manner as the DOT: "we classify jobs as *sedentary, light, medium, heavy,* and *very heavy*. These terms have the same meaning as they have in the [DOT], published by the Department of Labor." 20 C.F.R. §§ 404.1567, 416.967.

The regulations also contain definitions for the skill requirements for particular jobs, which are classified as "unskilled," "semi-skilled," and "skilled." For example, § 404.1568 and § 416.968 define "unskilled work" as that "which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 404.968(a). A job is thus deemed unskilled if "a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed." *Id*. § 404.1568(a). The regulations specifically state that the definitions for different gradients of "skill" level are made in accord with Department of Labor's DOT. 20 C.F.R. § 404.1568 ("[O]ccupations are classified as unskilled, semi-skilled, and skilled. In classifying these occupations, we use materials published by the Department of Labor."). Social Security Ruling 00-4p notes that, the "DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in [20 C.F.R. §§ 404.1568] and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT."

### 2. Application of RFC Limitations to Vocational Components

#### a. Limitation for Simple, Repetitive Work and DOT Reasoning Levels

It does not appear that the strength and SVP vocational components have led to a large number of language disputes in applying a claimant's RFC to jobs that a claimant can perform under the definitions provided by the DOT. However, the GED reasoning level applicable to particular RFC limitations has been addressed in a number of judicial decisions.

In particular, several district and appellate courts have analyzed how an RFC limiting a claimant to "simple, repetitive work" translates to the reasoning-level component assigned to job titles in the DOT. *See, e.g., Adams v. Astrue*, No. C 10-2008 DMR, 2011 WL 1833015, at *4-5 (N.D. Cal. May 13, 2011) (collecting cases and examining a split among the circuits on this question). While the United States Court of Appeals for the Ninth Circuit has not yet taken up this issue, the United States District Court for the Central District of California published a convincing and thorough order discussing the question in *Meissl v. Barnhart*, 403 F. Supp. 2d 981 (C.D. Cal. 2005).

In *Meissl*, the ALJ determined that the claimant could perform sedentary work that involved "simple tasks performed at a routine pace." *Id.* at 982. Based on this RFC, a VE testified that Meissl could still perform other work as a telephone information clerk and as a stuffer (machine packager). *Id*. On appeal of the ALJ's denial of benefits to the district court, Meissl asserted that the jobs the VE testified that she could perform required a higher level of reasoning skill under the DOT than her RFC limitation to work that involved only simple tasks performed at a routine pace. *Id.* Specifically, the job of "stuffer" identified by the VE was assigned a reasoning level of 2 in the DOT job definition, which Meissl asserted was beyond her ability to perform "simple, repetitive" work. *Id.* The court rejected this argument:

> The Social Security regulations separate a claimant's ability to understand and remember things and to concentrate into just two categories: "short and simple instructions" and "detailed" or "complex" instructions. 20 C.F.R. § 416.969a(c)(1)(iii) . . . The DOT, on the other hand, employs a much more graduated, measured and finely tuned scale starting from the most mundane ("simple one- or two-step instructions" at level one), moving up to the most complex ("applying principles of logical or scientific thinking . . apprehend the most abstruse classes of concepts" at level six) . . . To equate the Social Security regulations' use of the term "simple" with its use in the DOT would necessarily mean that all jobs with a reasoning level of two or higher are encapsulated within the regulations' use of the word "detail." Such a "blunderbuss" approach is not in keeping with the finely calibrated nature in which the DOT measures a job's simplicity.
>
> Even more problematic for Meissl's position is that she ignores the qualifier the DOT places on the term "detailed" as also being "uninvolved." This qualifier certainly calls into question any attempt to equate the Social Security regulations' use of the term "detailed" with the DOT's use of that term in the reasoning levels. Instead of simply seeking to equate the two scales based on the serendipity that they happen to employ the same word choice, a much more careful analysis is required in comparing the claimant's RFC with the DOT's reasoning scale.
>
> Here the ALJ found that Meissl could perform not just simple tasks but also ones that had some element of repetitiveness to them. A reasoning level of one on the DOT scale requires slightly less than this level of reasoning. While reasoning level two notes the worker must be able to follow "detailed" instructions, it also (as previously noted) downplayed the rigorousness of those instructions by labeling them as being "uninvolved."
>
> The Court finds that there is much to recommend for believing that Meissl's reasoning level is at level two rather than at level one . . . .

*Meissl's* finding, that a limitation for "simple, repetitive" work tasks encompasses DOT job titles assigned reasoning levels of both 1 and 2, has generally been embraced by other district courts in the Ninth Circuit, including the Eastern District of California, as persuasive authority. *See, e.g.,*

15

*Moua v. Astrue*, No. CIV S-07-2024 GGH, 2009 WL 997104, at *12-13 (E.D. Cal. Apr. 14, 2009) ("Rather than adhere to a strict construction of what [a simple-job-instruction] limitation equates to in terms of reasoning level, this court prefers to follow the well[-]developed reasoning of the Central District in [*Meissl*]."); *Riggs v. Astrue*, No. C 07-5242 RJB-KLS, 2008 WL 1927337, at *17-18 (W.D. Wash. Apr. 25, 2008).

Notably, moving beyond the level-2 reasoning addressed in *Meissl*, several courts have concluded that a claimant's limitation to "simple, repetitive tasks" is incompatible with DOT job titles assigned a reasoning level of 3. *Etter v. Astrue*, No. 10-cv-582-OP, 2010 WL 4314415, at *3 (C.D. Cal. Oct. 22, 2010) (DOT jobs assigned level 3 reasoning conflict with limitation to simple, repetitive work); *Pak v. Astrue*, No. 08-cv-714-OP, 2009 WL 2151361, at *7 (C.D. Cal. July 14, 2009) (DOT's reasoning level three jobs conflict with ALJ's limitation to simple, repetitive work); *Blakley v. Astrue*, No. C 08-5186 BHS, 2009 WL 279029, at *6- 7 (W.D. Wash. Feb. 3, 2009); *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (remand appropriate where ALJ failed to resolve a conflict between VE's assessment that Plaintiff could perform a job with a reasoning level of three and ALJ's finding that Plaintiff was limited to "simple and routine work tasks").

**b.    Limitation for One- to Two-Step Instructions and DOT Reasoning Levels**

Courts have also considered and reached differing conclusions as to whether an RFC limitation for simple, one- to two-step instructions is compatible with DOT reasoning level 2. The difference in the courts' conclusions appears to be predicated on the particular facts of each case and what the ALJ or the physician's words of limitation meant in the context of the medical evidence in the record.

For example, in *Bordbar v. Astrue*, No. CV 10-02095-VBK, 2011 WL 486540, at *1 (C.D. Cal. Feb. 1, 2011), the ALJ determined the claimant had an RFC that limited her to "1-2 step instruction jobs with no production quotas and only occasional contact with supervisors, coworkers and the public." The claimant asserted on appeal to the district court that the jobs identified by the VE involved GED level-2 reasoning abilities, which exceeds her abilities as set forth by the ALJ in

the RFC determination. *Id.* The court rejected this argument reasoning that, although the ALJ determined that the claimant had a depressive disorder, there was no indication in the record that she had organic or cognitive deficits. Moreover, the compensation examiner determined that the claimant was "able to perform detailed and complex instructions." *Id.* at *3. The claimant's intelligence and mental functioning were in the normal range and, other than having moderate limitations in certain areas of social functioning, she had no limitations in her activities of daily living and in maintaining concentration, persistence, or pace. Thus, the court concluded that it would "not be a fair inference from the record that the ALJ intended to assess Plaintiff as having a maximum Reasoning Level of 1," despite the ALJ's characterization of the claimant as limited to jobs involving one- to two-step instructions. *Id.*

In contrast, in *Coleman v. Astrue*, No. CV 10-5641 JC, 2011 WL 781930, at *1 n.1 (C.D. Cal. Feb. 28, 2011), the ALJ had determined the claimant was limited to one- to two-step jobs with no production quotas and no fast-paced job situations, with occasional contact with supervisors, the public, and co-workers. The VE testified that, given this limitation, the claimant could perform jobs that required a GED reasoning level of 2. *Id.* at * 4. On appeal to the district court, the claimant challenged the proposition that her limitation to one- to two-step jobs was compatible with the ability to perform work with a reasoning level of 2. *Id.* The court determined that the ALJ chose to use words in formulating the RFC that "nearly mirror[ed] the language contained in the description of reasoning level 1," i.e., "one- to two-step jobs." *Id.* at *5. Thus, the court concluded that there was at least a question whether the ALJ intended to limit Plaintiff to work that had a reasoning level of 1, as the language of the formulated limitation indicated. Moreover, the ALJ had not asked the VE whether the testimony provided conflicted with the DOT. The Court thus remanded the matter for further consideration.

        **c.**    **Limitation For Tasks Involving One- to Two-Step Instructions Does Not Encompasses All Unskilled Work**

The issue in this case is somewhat different from the cases discussed above. Here, the VE essentially testified that a limitation to jobs that involved one- to two-step instructions does not preclude any jobs in the entire world of unskilled, sedentary work as defined by the DOT.

"Unskilled work," however, as used by the DOT and the Commissioner's regulations, does not necessarily conflate with jobs that involve only simple one- to two-step instructions. These are two separate vocational considerations. Defining particular jobs as "unskilled" speaks more to the issue of the level of vocational preparation necessary to perform the job rather than the issue of the job's simplicity "which appears to be more squarely addressed by the [reasoning level] ratings." *Hall-Grover v. Barnhart*, 2004 WL 1529283, at *4 (D.Me. Apr. 30, 2004). In other words, not all "unskilled" jobs will necessarily be limited to the simplest level of work involving only one- or two-step instructions. *See Adams*, 2011 WL 1833015, at *5 (SVP levels relate to unskilled work and "does not address whether a job entails only simple, repetitive tasks" (quoting *Meissl*, 403 F. Supp. 2d at 983)). The United States Court of Appeals for the Eighth Circuit provided this discussion of the issue in *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997):

> The Social Security's own list of unskilled sedentary jobs, however . . . , indicates that many jobs within this range require more than the mental capacity to follow simple instructions. For each job described, the [DOT] specifies the type of reasoning capabilities the job requires . . . . For instance, a job rated reasoning level one requires the ability to understand and carry out simple instructions, whereas a job rated reasoning level two requires the ability to understand and carry out detailed instructions. Many of the jobs listed require level two reasoning or higher in the unskilled sedentary job category.

One particular example is the DOT job title of "surveillance – system monitor," DOT 379.367-010, that has a level-2 SVP component, which means it is unskilled pursuant to 20 C.F.R. § 404.1568(a) and the DOT, but it has a level-3 reasoning component, meaning the job requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and d]eal with problems involving several concrete variables in or from standardized situations." Regardless of whether the Court finds that Plaintiff's RFC limitation for work involving tasks with one- to two-step instructions encompasses both levels 1 and 2 reasoning as set forth in the DOT, the Court cannot conclude that such a limitation also encompasses level 3 reasoning. *See, e.g., Etter*, 2010 WL 4314415, at *3 (DOT jobs assigned level 3 reasoning conflict with limitation to simple, repetitive work). Because "unskilled" work includes jobs that require level-3 reasoning skills under the DOT framework, the VE's testimony that Plaintiff, who was limited to one- to two-step tasks, could perform the "world of unskilled work" is inconsistent with

the DOT, notwithstanding the VE's statement that his testimony was consistent with the DOT. In that regard, the Court concludes there was error at the Fifth Step.

Further, the Court cannot definitively conclude that the error was harmless. In *Barrios v. Astrue*, No. 1:09-cv-01100-GSA, 2010 WL 2825684 (E.D. Cal. Sept. 28, 2010), the claimant presented a very similar argument to that which Plaintiff asserts here. Unlike this case, however, the claimant in *Barrios* affirmatively stated that there were a number of level-one reasoning jobs available that could be performed given the limitation adopted by the ALJ. *Id.* at * 9 (determining that any presumed conflict between VE's testimony and DOT was not prejudicial in light of the plaintiff's concession "that forty-six different positions at Reasoning Level One are available to her"). There is no such concession here.[5] Additionally, the Commissioner bears the burden at the Fifth Step to show that there is alternative work in sufficient numbers that Plaintiff can perform – it is not Plaintiff's burden to establish that there are no jobs available that she can perform. Rather, it is Plaintiff's burden on appeal to show that the error was prejudicial. *Shinseki v. Sanders*, __ U.S. __, 129 S. Ct. 1696 (2009).

The VE did not identify job titles in the DOT that Plaintiff could perform or the number of jobs under any job title available nationally and regionally. Rather, the only number of jobs in the record relates to the total number of sedentary, unskilled jobs available which includes jobs at reasoning levels 1 *and* higher – some of which Plaintiff could not perform given her non-exertional limitation to tasks involving simple, one- to two-step instructions. Due to the conflict between the VE's testimony and the DOT, the Commissioner failed to satisfy the burden at the Fifth Step. The Commissioner's failure to meet the Fifth-Step burden was prejudicial to Plaintiff because there is a lack of any job data or testimony in the record from which the Court could definitively conclude otherwise.

---

[5] While the Court presumes that there are a number of sedentary jobs in the DOT that require only level-1 reasoning skills, there is no evidence in the record indicating the number of unskilled, sedentary, GED level-1 jobs available such that the Court can affirmatively find that there is significant alternative work in the national and regional economy that Plaintiff can perform.

## VI.  CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, REVERSED and the case REMANDED to the ALJ for further proceedings consistent with this order.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Olivia Gonzales and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

**Dated:   January 4, 2012**                          /s/ Sheila K. Oberto
                                                UNITED STATES MAGISTRATE JUDGE